UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:

| | |
|---|---|
| The Young Men's Christian Association of Metropolitan Milwaukee, Inc., | Case No. 14-27174-svk (Joint Administration Requested) |
| Debtor. | (Chapter 11) |

## DEBTOR'S OMNIBUS MOTION TO ASSUME ALL EXISTING MEMBERSHIP AGREEMENTS

The Young Men's Christian Association of Metropolitan Milwaukee, Inc. (the "Debtor") submits this motion (this "Motion") pursuant to sections 105(a) and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Code"), for the entry an order authorizing the Debtor to assume all existing membership agreements with its members. In support of this Motion, the Debtor states as follows:

### Jurisdiction and Background

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On June 4, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Code.

3. The Debtor remains in possession of its estate and is operating and managing its business as a debtor-in-possession, pursuant to §§ 1107 and 1108 of the Code.

Mark L. Metz
Olivier H. Reiher
Leverson & Metz S.C.
225 E. Mason St., Suite 100
Milwaukee, WI 53202
414-271-8502 (direct)
414-271-8504 (fax)
mlm@levmetz.com

4. The YMCA is the nation's leading nonprofit committed to strengthening communities through youth development, healthy living and social responsibility. For more detail on the factual background of the Debtor, its operations, and the events leading up to the Petition Date, parties are referred to the *Affidavit of Julie A. Tolan Providing Background Information in Support of First-Day Motions*, hereby incorporated by reference.

### Summary of Relief Requested and Supporting Reasons

5. By this Motion, the Debtor is requesting authority to immediately assume all of its approximately 37,518 health club membership contracts (the "Membership Agreements"), each of which was signed by a member (the "Signatory Members") either individually or on behalf of a household. When family memberships and two-adult households are factored into account, the Membership Agreements provide access to the Debtor's facilities and basic classes for more than 115,000 persons (the "Active Members"). A sample copy of a Membership Agreement is attached as *Exhibit A*, and more details about the Membership Agreements are provided in the *Affidavit of Julie A. Tolan in Support of Debtor's Omnibus Motion to Assume All Existing Membership Agreements,* attached as *Exhibit B*.

6. The Debtor is requesting this relief for reasons of practicality, to conserve resources of the estate and to minimize uncertainty among its Active Members. The rationale behind this Motion can be summarized as follows:

    a. Each Membership Agreement qualifies as an "executory contract."

    b. As a result, the Debtor would be obligated to identify all 37,518 Membership Agreements on Schedule G. At 20 names per page, that listing would add more than 1,870 pages to the Debtor's schedules.

    c. Likewise, the Debtor would be required to treat all Signatory Members as creditors holding contingent claims due to the possibility of the Debtor choosing to reject their Membership Agreements. Including each Signatory Member as an unsecured creditor would add about 3,750 more pages to Schedule F.

d. Once scheduled as creditors, every Signatory Member would automatically receive multiple legal notices of limited relevance to their situation, generating significant confusion.

e. Just for photocopying and postage, the cost of each notice mailed to all Signatory Members would be more than $26,000.

f. If the Debtor defers its decision to assume the Membership Agreements for even a week, its employees and advisors are likely to spend hundreds of hours trying to explain to individual Active Members the status of their neither-assumed-nor-rejected Membership Agreements under the intricacies of section 365.

g. However, if the Debtor immediately *assumes* all of the Membership Agreements, the Signatory Members would no longer hold contingent prepetition claims, and would not be considered creditors.

h. The message to all Active Members would then be simple: The Y has essentially reaffirmed its contract with you, and your rights are unaffected by the Chapter 11 filing.

i. The Debtor is prepared to disseminate that message to Active Members by email, handouts and postings at its centers, and an explanation on the Debtor's website.

j. Assumption of the Membership Agreements imposes no additional expenses or risks on the Debtor's estate. There are no cure costs associated with assuming the Membership Agreements and no additional expenses required for the Debtor to continue performing its obligations under them.

k. Finally, immediate assumption of the Membership Agreements would not unfairly prejudice any Active Member. Pursuant to the terms of their contracts, Members may terminate their own obligations by complying with minimal requirements.

7. Thus, immediate assumption of the Membership Agreements has no negative consequences. It does not impose cure costs on the Debtor; it does not compel the Debtor to dedicate new or non-ordinary resources to the performance of its contractual obligations; it does not expose the estate to the risk of large administrative claims for post-assumption breaches; and it does not force any dissatisfied Member to continue its relationship with the Debtor.

8. Conversely, a delay in assumption of the Membership Agreements can have *only* negative consequences: It would cause the estate to incur tremendous and wasteful administrative

expenses, and it would unnecessarily create anxiety and uncertainty among Active Members, all without any corresponding benefit to anyone involved.

## Legal Justification for the Requested Relief

9. The Code does not specifically define "executory contract." In the bankruptcy context, Courts consider an executory contract to be a contract in which the obligation of both the debtor and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance by the other. *See In re FV Steel and Wire Co.*, 331 B.R. 385 (Bankr. E.D. Wis. 2005).

10. The Membership Agreements impose continuing and reciprocal performance obligations on both the Debtor and the Signatory Members. The Debtor must continue to provide access to their facilities, and the Signatory Members must continue to make their payments. Thus, the Membership Agreements qualify as executory contracts.

11. Under Code § 365(a), a debtor-in-possession "may assume or reject any executory contract or unexpired lease." This enables a Chapter 11 debtor to maximize the value of its estate by assuming executory contracts that benefit the estate and rejecting those that do not. *See In re Nat'l Gypsum Co.*, 208 F.3d 498, 505 (5th Cir. 2000). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor in possession to use valuable property of the estate and to 'renounce title and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

12. In determining whether the proposed assumption of specific executory contracts is appropriate, courts defer to a debtor's business judgment. Upon a showing that a debtor has exercised its sound business judgment, courts should approve such assumption under § 365. *See NLRB*

*v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (recognizing that business judgment standard is applied to authorize either assumption or rejection of executory contracts); *In re Old Carco LLC (f/k/a Chrysler LLC)*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) (courts should employ the business judgment standard in determining whether to permit a debtor to assume or reject a contract); *In re Minges*, 6022 F.2d 38, 42–43 (2d Cir. 1979) (the business judgment test is appropriate for determining when executory contract can be assumed or rejected).

13. Courts generally refrain from second-guessing a debtor's business judgment concerning the assumption of an executory contract. *See In re Old Carco LLC*, 406 B.R. at 198 (recognizing that business judgment standard would become irrelevant if a court second guessed a decision that the debtor could show was based on rational business factors); *In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) (courts will ordinarily defer to the business judgment of a debtor's management).

14. The business judgment test merely requires a showing that assumption of the contract in question will benefit a debtor's estate. *See In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 (Bankr. S.D.N.Y. 1996).

15. Typically, the benefit that a debtor expects to receive under an assumed contract is continued performance by the counterparty. Here, that is not the case. With minimal notice and no explanation, Signatory Members are free to terminate their Membership Agreements by simply surrendering their membership cards – an option that is available whether or not the Debtor assumes those Membership Agreements. So the Debtor does not expect that assumption will provide the benefit of "binding" the Signatory Members to long-term future performance.

16. Instead, assumption of the Membership Agreements will confer benefits to the estate in the form of avoided inconvenience and expense. By assuming the Membership Agree-

ments before filing its schedules, the Debtor could save up to $100,000 in costs associated with treating every Signatory Member as the holder of a contingent unsecured claim. Just as important, but unquantifiable in terms of dollars, is the benefit of having a clear and uninterrupted relationship with its Active Members during this case. Assumption of the Membership Agreements will enable the Debtor to preserve the estate's assets and concentrate its personnel resources on the reorganization efforts, while leaving all Active Members in the same position they were in prepetition.

17. In exercising its business judgment, a debtor not only identifies the expected benefits to be gained by assumption of a contract, but also compares those benefits to the possible costs. In this case, the Debtor is unable to foresee any significant downside that would offset the benefits of assuming the Membership Agreements. The Debtor does not believe it is in default under any of the Membership Agreements, so assumption would not entail cure costs.

WHEREFORE, the Debtor respectfully requests that the Court enter an order authorizing the Debtor to assume all of its Membership Agreements, and to notify its Active Members of such assumption through direct communications that include email, on-site handouts and postings, and an appropriate explanation on the Debtor's website.

Dated this 4th day of June, 2014.

> LEVERSON & METZ S.C.
>
> /s/    Mark L. Metz
> Mark L. Metz
> Olivier H. Reiher
> Attorneys for The Young Men's Christian
> Association of Metropolitan Milwaukee, Inc.
>  -and- YMCA Youth Leadership Academy, Inc.
> 225 E. Mason Street, Suite 100
> Milwaukee, WI  53202
> (414) 271-8502 (direct)
> (414) 271-8504 (fax)